## Commonwealth v. Levy

*Joseph J. Cimino*, District Attorney and *Thomas J. Foley*, Assistant District Attorney, for Commonwealth.

*Morris B. Gelb* and *Harvey Gelb*, for appellant.

NEALON, J., October 27, 1961.—This matter comes before us on appeal of defendant, Bernard Levy, from a summary conviction before the Police Magistrate of the City of Scranton. From a stipulation of facts filed by the parties, the following appears:

Bernard Levy, defendant, is engaged in the business of selling shoes at 305 Penn Avenue, Scranton. On Sunday, September 17, 1961, defendant sold, at retail, one pair of shoes for $10. He was arrested, found guilty and fined $100 by the Police Magistrate of the City of Scranton for violating the Act of August 10, 1959, P. L. 660, 18 PS §4699.10, which was an amendment to the Act of June 24, 1939, P. L. 872, 18 PS §4101.

The section under which defendant was convicted provides as follows:

"Whoever engages on Sunday in the business of selling, or sells or offers for sale, on such day, at retail,

clothing and wearing apparel, clothing accessories, furniture, housewares, home, business or office furnishings, household, business or office appliances, hardware, tools, paints, building and lumber supply materials, jewelry, silverware, watches, clocks, luggage, musical instruments and recordings, or toys, excluding novelties and souvenirs, shall, upon conviction thereof in a summary proceeding for the first offense, be sentenced to pay a fine of not exceeding one hundred dollars ($100), and for the second or any subsequent offense committed within one year after conviction for the first offense, be sentenced to pay a fine of not exceeding two hundred ($200) dollars or undergo imprisonment not exceeding thirty days in default thereof.

"Each separate sale or offer to sell shall constitute a separate offense.

"Information charging violations of this section shall be brought within seventy-two hours after the commission of the alleged offense and not thereafter."

The sole contention advanced by defendant is that shoes do not fall within the definition of "clothing and wearing apparel, clothing accessories . . ." and, therefore, may be sold on Sunday. There is no attempt to question the constitutionality of the act. See Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U. S. 582 (1961).

Defendant injects the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558, which provides that all penal provisions of a law shall be strictly construed. His conclusion is that a strict construction of the act would eliminate shoes as an item proscribed, inasmuch as shoes are not specifically mentioned and, as hereinbefore averred, are not encompassed within the term "clothing and wearing apparel, clothing accessories. . . ."

While strict construction of penal statutes is required, courts are not required to give words of a criminal statute their narrowest meaning or to disregard evident legislative intent: Commonwealth v. Mason, 381 Pa. 309 (1955). The canon of strict construction of penal statutes is not an inexorable command to override common sense and evident statutory purpose: Commonwealth v. Butler, 189 Pa. Superior Ct. 399 (1959). Consequently, it is important for us to determine what was the evident intent of the Pennsylvania legislature in enacting this statute into law. "To ascertain legislative intent, in the absence of prior judicial construction, a consideration of an act's contemporaneous legislative history for guidance is proper": Rossiter v. Whitpain Township, 404 Pa. 201, 204 (1961). See also Bierman Liquor License Case, 188 Pa. Superior Ct. 200 (1958). It is obvious from a reading of the legislative history that the legislature intended the phrase "clothing and wearing apparel, clothing accessories . . ." to be all-encompassing in furtherance of the design to prohibit retail sales on Sunday of items that do not qualify as necessities in order to set aside one day a week as a day of rest for store owners and their employes.

It would be absurd to conclude that the legislature intended to proscribe retail sales of clothing, such as suits, dresses and socks, in order to guarantee a day of rest, while at the same time allowing widespread retail sale of shoes. The employes of a shoe store are entitled to a day of rest just as much as the employes of a dress shop pursuant to the dominant purpose of this act.

The following are excerpts from statements of proponents of this bill during the legislative debate:

Mr. Rooney: "This bill, in my opinion, represents the only effective approach to the problem of preventing Sunday from becoming another bargain day in business." . . . "The public would not be inconvenienced in any way since the prohibited items are in

In addition, the term "clothing and wearing apparel, clothing accessories . . ." plainly includes shoes within its purview. In interpreting the language of a statute, words and phrases must be construed according to rules of grammar and according to their common and approved usage: Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533. Webster's New International Dictionary, second edition, unabridged, contains the following definitions:

"wearing apparel—clothing; clothes. . . .

"clothing—2. garments in general; clothes, dress, raiment; covering . . .

"clothes—covering for the human body; dress; vestments, vesture;—a general term for whatever covering is worn, or is made to be worn, for decency or comfort . . .

---

no sense necessities or convenience goods that should be, and must be, sold on Sunday." . . . "This bill is a bill, also, that will enable hundreds of thousands of store clerks in Pennsylvania to have a day to be home with their families, since they have to work on Saturday and since Sunday is one of the days that the children are home from school." 36 Pennsylvania Legislative Journal 1138.

Mr. Walker: "This is not a bill. It is rather an indictment of our civilization which makes this kind of legislation possible and necessary. It is too bad that business will not permit its employees to have a day of rest. It is too bad that we must legislate morals, as we may be doing in this bill." id. 1139.

Mr. Mahady: "We must have one day a week in which to rest from our labors." The economic stability of the Country demands that we do keep one day a week for rest; . . ." id. 1140.

Mr. Whalley: "I think it is principally economic. More and more places are open for business today than ever before on Sunday. If this is to continue, all businesses are going to be forced to open or stay open if they are going to be competitive." id. 1143.

Mr. Lane: "It is going to give the people of Pennsylvania, especially the working people, however, a day of rest to which they are entitled and we should make sure that they receive that day of rest by voting for this legislation." id. 1143.

Mr. Seyler: "This bill only says that there shall be one day on which people shall not sell." id. 1143.

"shoe—2. specif., a foot covering with a leather sole and heel and an upper covering at least the instep and often the ankle, in its more usual forms fitted for at least limited wear out of doors; . . .

"footwear—wearing apparel for the feet, esp. boots, shoes, etc."

It is too obvious to require protracted discussion that, by definition and common approved usage, shoes are identifiable within the term "clothing and wearing apparel, clothing accessories," . . . and the retail sale of shoes by defendant, on Sunday, violated this provision in the act. Shoes, being of the footwear family, are properly described as wearing apparel for the feet.

Therefore, October 27, 1961, defendant, Bernard Levy, is adjudged guilty of selling shoes, at retail, on Sunday, September 17, 1961, in violation of the Act of August 10, 1959, P. L. 660, 18 PS §4699.10, and is sentenced to pay a fine of $100 and costs of prosecution.

### Order

Now, October 27, 1961, defendant, having indicated in open court that he desires to appeal to the Superior Court, it is hereby ordered and decreed that the appeal shall act as a supersedeas upon defendant entering his own recognizance in the amount of $100.