535 A.2d 1205

Big Beaver Falls Area School District, Appellant *v.* Nick Cucinelli, Appellee.

342

Argued October 5, 1987, before Judges CRAIG, DOYLE and BARRY, sitting as a panel of three.

*Samuel J. Orr, III,* for appellant.

*Daniel R. Delaney, Delaney and Evans,* for appellee.

OPINION BY JUDGE CRAIG, January 6, 1988:

Big Beaver Falls Area School District appeals the order of Judge THOMAS C. MANNIX, of the Court of Common Pleas of Beaver County, reversing the adjudication of the School Board and reinstating Nicholas M. Cucinelli to his teaching position with back pay.

The issue is whether a school district may treat a teacher's unapproved leave of absence as a break in service, requiring a rebeginning of seniority credit, when two years earlier the school superintendent did not so treat the absence.

The facts are not in dispute. Mr. Cucinelli began teaching social studies in the school district in January 1969. In February, 1982, when Mr. Cucinelli aggravated a neck and back injury received in an automobile accident a few years earlier, he called the principal and informed him that he could not report for work. Mr. Cucinelli's physician told him to refrain from physical activity until he had another medical examination in March. To obtain convalescent treatment, he went to Florida to recuperate at his parents' home. On March 12, 1982 Mr. Cucinelli's doctor examined him and issued a note stating that he was able to return to work. The superintendent of the school district, not satisfied with that note, requested that Mr. Cucinelli obtain another explanation from the physician. Mr. Cucinelli submitted a second note. In July of 1982, the superintendent, still not satisfied with Mr. Cucinelli's medical excuses, sent him a letter which read in pertinent part as follows:

> During the 25 school days you were absent you had five (5) sick days remaining and you

were paid by the Business Office for your first five days since you reported your absence as illness. You had no remaining sick days to cover your absence for the next twenty days and you made no attempt to seek approval to be away from your job for the time you knew your doctor's excuse was not acceptable and you have made no attempt to provide me with a further statement that would justify your absence. Therefore, you will not be given seniority credit for the following days during the 1981-1982 school year:

February 22, 23, 24, 25, 26, 1982
March 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 1982.
. . .
[Y]our seniority now stands as indicated. . . .

Mr. Cucinelli decided not to contest the superintendent's determination of his absence as "unapproved" and the loss of fifteen days seniority because he still had 76 days of seniority over the social studies teacher closest to him.

Mr. Cucinelli continued to teach throughout the 1982-83 and 1983-84 school years, during which his seniority status proceeded on the basis reflected in the superintendent's 1982 letter. In June of 1984, the Board of School Directors decided to eliminate a social studies position because of declining enrollment. The board furloughed a teacher determined to be junior in seniority to Mr. Cucinelli. However, on August 28, 1984, at a board hearing, the furloughed teacher contended that Mr. Cucinelli's unapproved leave constituted a break in service which reduced his seniority to zero. On September 4, 1984, the board agreed and furloughed Mr. Cucinelli on the basis that his 1982 unapproved leave constituted a break in service, so that, with his seniority at zero in 1982, he fell into junior status.

Mr. Cucinelli exercised his rights under the Local Agency Law,[1] and the superintendent conducted a formal grievance hearing on September 19, 1984. The superintendent denied the grievance and stated: "[C]ase law has established that an unapproved leave constitutes a break in seniority. Your seniority began to accrue anew when you returned following this [1982] leave."

After Mr. Cucinelli received a hearing before the Board of School Directors, the board upheld the superintendent's decision furloughing him.

Mr. Cucinelli appealed the determination of the board to the Court of Common Pleas of Beaver County. After a hearing, Judge MANNIX reversed the decision of the board. Because we hold that an unapproved leave is not per se a break in service and because the school board is prohibited, on the basis of equitable estoppel, from now asserting that Mr. Cucinelli's unapproved leave effected a break in service, we affirm the decision of the trial court.

To support its position, the school district advances two theories. First, it argues that section 11-1125.1(a) of the Public School Code of 1949[2] necessarily implies that all unapproved leaves will constitute breaks in service. Secondly, the school district asserts that existing case law provides that all unapproved leaves constitute breaks in service.

In 1979 the legislature added to the Public School Code a new section 11-1125.1(a), which reads in part as follows: "[A]pproved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue

---

[1] 2 Pa. C. S. §§551-555, 751-754.

[2] Section 11-1125.1(a) of The Public School Code of 1949, March 10, P.L. 30, *as amended,* added by Section 3 of the Act of November 20, 1979, P.L. 645, *as amended,* 24 P.S. §11-1125.1(a).

to accrue during . . . all approved leaves of absence." 24 P.S. §11-1125.1(a). The school district argues the negative implication that, because the statute provides that approved absences shall not constitute breaks in service, all *unapproved* absences therefore must be treated as breaks in service.

The Pennsylvania Supreme Court and the Commonwealth Court have, in various cases, applied the principle of negative implication using the legal maxim *expressio unius est exclusio alterius. Cali v. City of Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962) (The Election Code provided that the only time a special election to fill a vacancy may be held in a different year than that prescribed for a regular term election is when the vacancy has occurred in the office of United States Senator, or Congressman, or a Senator or Representative in the General Assembly or in a councilmanic or municipal legislative office. The Supreme Court used *expressio unius* to determine that this statute precluded an election to fill a vacancy in the mayor's office in a year that was not prescribed for a regular term election.); *Samilo v. Pennsylvania Insurance Department,* 98 Pa. Commonwealth Ct. 232, 510 A.2d 412 (1986). (A statute listed reasons that an insurer may *not* use to refuse renewal of an automobile insurance policy. The list of reasons did not include drinking while driving. The court used *expressio unius* to conclude that an insurance company may deny renewal because of drinking while driving.)

The Pennsylvania Supreme Court has recognized, however, that the maxim of negative implication does not constitute an inflexible rule. *See Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977), in which the court observed "that merely to hold automatically that the legislature's intent does not encompass something not specifically included in a statute that contains specific provisions can some-

times thwart that intent. Cf. Commonwealth v. Creamer Monumental Properties, Inc., 459 Pa. 450, 479-480, 329 A.2d 812 (1974)." In *Monumental Properties*, the Supreme Court refused to regard housing rentals as excluded from coverage of a consumer protection law merely because the law did not expressly mention that activity as one covered by the law.

Significantly, the legislature did not mention negative implication as an interpretive principle in the Statutory Construction Act of 1972, 1 Pa. C. S. §§1501-1991.

The true nature of the principle of *expressio unius* has been recognized by one commentator:

> Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example of this is probably *expressio unius est exclusio alterius,* which is a rather elaborate, mysterious sounding and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or the privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly this maxim is at best a description after the fact, of what the court has discovered from context.

Reed Dickerson, The Interpretation and Application of Statutes (1975) at 234-235.

Because our Supreme Court has recognized that negative implication is a flexible rule not to be applied

in all cases, because its use in statutory interpretation is not required by the Statutory Construction Act, and because it should always be considered in the context of the particular statute, we must determine if the application of negative implication to section 11-1125.1(a), which would result in all unapproved leaves of absence being treated as breaks in service, fulfills the legislative intent of the statute.

If this court applied negative implication as urged by the school district, an unapproved absence for one or two days would result in a total loss of seniority. But we could not accept such a draconian result based merely upon unspoken implication. In requesting that we apply negative implication to the statute, the school district is asking us to speculate too broadly on the legislature's intention regarding unapproved leaves. We cannot do so, mindful of our duty to give primacy to express legislative rules, while minimizing those occasions when we articulate rules to fill gaps left by the legislature.

Because we reject the school district's invitation to apply the principle of negative implication to section 11-1125.1(a), we turn to its precedential authority.

The school district's only case authority for the proposition that every unauthorized leave constitutes a break in service, reducing seniority to zero, is *Wilchenski v. School District of Borough of Throop*, 383 Pa. 394, 119 A.2d 510 (1956).

*Wilchenski* reached two holdings regarding two separate individuals. The first holding involved a teacher who did not teach for an entire term because the school board did not renew his contract. The Pennsylvania Supreme Court understandably treated that hiatus as a "break in service", requiring a "rebeginning so far as seniority rights are concerned." *Id*. 383 Pa. at 396, 119 A.2d at 512.

The second holding involved a female teacher absent for seven weeks without leave approval, on account of

medical problems which arose from pregnancy. She did, however, receive five days sick leave and full salary. The *Wilchenski* court simply determined that woman to be junior to another teacher who had the same original work commencement date.

Although Mr. Justice MUSMANNO's opinion describes continuity of service by using a bridge-supported-by-piers figure of speech with reference to both of the holdings, it did not expressly characterize the pregnancy absence as either a "break in service" or one mandating the "rebeginning of seniority rights." Obviously, no such analysis is necessary to support the *Wilchenski* court's holding with respect to the relatively lower seniority status of the female teacher. *Id.,* 383 Pa. at 397, 119 A.2d at 512-13.

Consequently, contrary to the school district's assertion, there is no firm holding that all unauthorized leaves constitute breaks in service.

Moreover, the doctrine of equitable estoppel here prohibits the school district from now negating the superintendent's firm characterization of the consequence of Mr. Cucinelli's unapproved leave of absence as resulting in just a deduction of an equivalent number of days of seniority.

Equitable estoppel is a doctrine of fundamental fairness that prevents one from " 'assuming a position . . . to another's disadvantage inconsistent with a position previously taken . . . the person inducing the belief in the existence of a certain state of facts is estopped to deny . . . or repudiate his acts, conduct or statements.' " *Novelty Knitting Mills Inc. v. Siskind,* 500 Pa. 432, 436, 457 A.2d 502, 504 (1983) quoting *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975).

A court's application of equitable estoppel depends on the facts of each case. Equitable estoppel will only apply when a party, intentionally or through culpable

negligence, through his acts or statements induces another to believe that certain facts exist and to rely on those facts so as to be prejudiced by that reliance. *Department of Revenue v. King Crown Corp.*, 52 Pa. Commonwealth Ct. 156, 415 A.2d 927 (1980).

The Superior Court recently held that equitable estoppel will not be applicable where based upon expressions of legal opinions. *Gabovitz v. State Automobile Insurance Association*, 362 Pa. Superior Ct. 17, 523 A.2d 403 (1987). However, the superintendent's representation in this case to Mr. Cucinelli embodied an administrative determination which effected a specific seniority deduction and which therefore differed from a mere expression of legal opinion. Thus, *Gabovitz* is no impediment to the application of equitable estoppel in this case.

The superintendent of the school district, in his letter of July 2, 1982, represented to Mr. Cucinelli that his unapproved leave of absence merely reduced his seniority by fifteen days. Moreover, throughout the next two years, the school district's own records reflected Mr. Cucinelli's seniority as represented to him in the superintendent's letter. The representations of the superintendent induced Mr. Cucinelli to believe that his unapproved leave had cost him fifteen days of seniority, but that he still had seventy-two days more seniority than the next closest social studies teacher. In view of that belief, induced by the actions of the school district, Mr. Cucinelli did not appeal the determination of his 1982 leave as an unapproved leave.

Thus, the facts of this case contain the necessary elements for the application of the doctrine of equitable estoppel, and fundamental fairness requires that the school district be estopped from now asserting that Mr. Cucinelli's unapproved leave constituted a break in service.

Accordingly, we affirm Judge MANNIX's sound decision.

ORDER

NOW, January 6, 1988, the order of the Court of Common Pleas of Beaver County, at No. 1873 of 1985, dated October 31, 1986 is affirmed.

————

CONCURRING OPINION BY JUDGE DOYLE:

Although I agree with much of the rationale set forth by the majority, I cannot embrace the reasoning in its entirety. I think that the meaning of Section 1125.1 is a question we need not reach because I believe that the doctrine of equitable estoppel applies to this case and operates to bar the School District from reducing Mr. Cucinelli's seniority by more than fifteen days. While it is true that a *mutual* mistake as to law is not a basis for invoking this doctrine, *Gabovitz v. State Automobile Insurance Association,* 362 Pa. Superior Ct. 17, 523 A.2d 403 (1987), the "mistake" here was, in my view, neither mutual nor legal. The July 1982 letter in no way suggests that it constitutes a legal opinion. To the contrary, it reads as a discretionary administrative decision. Further, because the letter does not express a legal opinion, Mr. Cucinelli, *a fortiori,* could not have "mutually" embraced a mistaken legal opinion. Thus, I would hold that equitable estoppel alone bars the school district from reducing Mr. Cucinelli's seniority by more than fifteen days. Additionally, I must add that while it is true that *Wilchenski v. Throop Borough School District,* 383 Pa. 394, 119 A.2d 510 (1956) did not expressly say the hiatus at issue there constituted a break in service, Judge MENCER, in *Andresky v. West Allegheny School District,* 63 Pa. Commonwealth Ct. 222, 437 A.2d 1075 (1981), stated, "In Wilchenski, the Court ruled that a teacher's absences constituted a break in

service for seniority purposes where the teacher was absent from work for approximately two months because of physical complications arising during pregnancy and *no formal or express leave had been authorized by the school board.*" *Id*. at 228, 437 A.2d at 1079 (emphasis added in part).